Harris *v.* The People.

———————•◦•———————

NEW-YORK GENERAL TERM, June, 1851. *Edmonds, Edwards, and Mitchell,* Justices.

## HARRIS *vs.* THE PEOPLE.

An indictment for forgery lies for making and issuing a false instrument in the name of another, requesting persons to whom goods have been sent by the owner, to deliver them to the defendant; the latter having induced the owner so to send the goods, by falsely representing that he was directed by those to whom the goods were sent, to buy the same for them.

And it is sufficient to alledge in the indictment, that the forgery was with intent to defraud the persons to whom the goods were sent, and to whom the order was directed.

Harris v. The People.

ERROR to the the court of general sessions of the city and county of New-York. The defendant was indicted for forging an order for the delivery of goods, in the following words:

" Messrs Ubsdell Pearson & Co
        Gent
                You will please send by the bearer the three pieces of silk if left at your place yet as the purchasers are in grate want of them to knight and oblige

                                        Chittenden Bliss & Co
73 Broadway                             pr Walker."
        Aug 31, 1850.

The indictment alledged the intent to have been to injure and defraud the firm of *Ubsdell, Pearson & Co.*, and divers other persons, to the jurors unknown.

Charles Pearson, being sworn as a witness on the part of the people, testified, " I am one of the firm of Ubsdell and Pearson, merchants, in Canal-street. On the twenty-first of August last, we received three or four pieces of silk goods from Chittenden, Bliss & Co. We were in the habit of getting goods from them. The silks were worth from two hundred and fifty to four hundred dollars. They were taken away from the store by a boy on the same day, by an order signed Chittenden, Bliss & Co. I don't know the boy. This is the order now shown to me, a copy of which is set forth in the indictment. I know the prisoner; he came in the afternoon, to know if goods had been sent there from Chittenden, Bliss & Co., by mistake. I told him there had not been any goods sent to us. In an hour or two, he came in again very much excited, to know if goods had been sent. I asked prisoner how he came to make the mistake, directing a parcel to us. His reply was, he had been but a short time in their employ, and was not acquainted with their customers. I remarked, we had not received them. He replied, he was sorry, as the parties who ordered them were going to leave town that afternoon. The goods did not arrive till 7½ o'clock. About half an hour after, this order was brought in by a boy, and the goods delivered to him; but not liking the

looks, and not being satisfied with the answer of the boy, I told one of my men to follow the boy, and see where he went with the goods. My young man came back, and said the goods were taken to a hotel. I was not satisfied, and got an officer, and went to Harris's Hotel, and found the goods which were delivered by this order." The witness being cross-examined, said: "I did not order any silks that day from Chittenden, Bliss & Co. I never gave them an order for silks; the goods were sent without our knowledge and without being ordered by us. We had no ownership in those three pieces of silk. The boy was about fourteen years old. The goods were carried to the Mansion House. The express company left the goods at my store. The bill was sent with the goods." Charles G. Langdon, being sworn on the part of the people, said: "I am one of the firm of Chittenden, Bliss & Co. I never saw prisoner before he called at our store on the thirty-first of August last. He bought the silks from me, and directed them to be sent to Ubsdell, Pearson & Co., and directed them to be charged to that firm; and they were sent that evening. We have no person by the name of Walker in our employ. Harris never was in our employ. The order is a forgery. The three pieces of silk were recovered that evening, and found with Harris, at the Mansion House Hotel, where Harris boarded. Harris did not ask me whether Ubsdell, Pearson & Co. were in the habit of buying goods from us. Harris said he wanted the goods sent immediately. I don't think he said he wanted the goods to fill an order. Ubsdell, Pearson & Co. were not in the habit of buying silks from us, and I thought there might be some mistake. I had my suspicions; but being in a stage, I did not stop at Ubsdell, Pearson & Co.'s. Harris did not tell me he was authorized to purchase the silks. I was before the grand jury on this charge. There were no other pieces of silk sold to Harris but those three pieces." A policeman testified that he arrested Harris at the Mansion House between 10 and 11 o'clock, and found with him the three pieces of silk.

Here the prosecution rested, and the counsel for the prisoner requested the court to charge the jury, 1. That to consti-

Harris v. The People.

tute forgery, there must be an injury to person or to property. 2. That the evidence in the case did not sustain the indictment, because they had not shown that Ubsdell, Pearson & Company had sustained any injury, or that they could be injured in any way by the delivery of the goods on the order, as they had no interest in said goods. 3. That the goods were obtained from Chittenden, Bliss & Co. by a fraud or trick, and the above order was only a mere privy token to get the possession of the property. 4. That no person was injured by said order, because Chittenten, Bliss & Co. had parted with the goods, and Ubsdell, Pearson & Co. having no interest in the goods, could not be affected by the order ; and that no injury could accrue to any one, and there could be no intent to defraud any one by said order. 5. That the order was not such an instrument as a charge of forgery could be sustained upon.

This request of the counsel was refused by the court ; and the counsel for the defendant excepted.

And the recorder thereupon charged the jury : That Ubsdell, Pearson & Co. had the lawful possession of the goods, and such an interest as justified the charge contained in the indictment. That the order for the delivery of the goods by Ubsdell & Co. purporting to have been given by Chittenten, Bliss & Co., was an order directly within the meaning of the second subdivision of the 33d section of the act entitled " Art. 3d, of Forgery." The case being submitted to the jury, they found the prisoner guilty ; and he brought a writ of error.

*A. D. Russell,* for the plaintiff in error. I. To constitute the crime of forgery, there must be an injury to the person, or to property. (2 *R. S.* 560, § 33, 2*d ed.*) II. The evidence does not sustain the indictment, as the prosecution have not shown that any injury to person or to property could have accrued by the order in question, or that the intent to defraud was manifest from the act charged. (6 *Hill,* 491. 21 *Wend.* 409, 414, 415.) III. Ubsdell, Pearson & Co., could have sustained no injury, and there could be no intent to defraud them, as they had no title to the property, either general or special, that would have entitled

them to have maintained their action against any one who deprived them of it. (1 *Cowen's Tr.* 285, 443. 8 *John.* 432. 11 *Wend.* 54. 7 *Cowen,* 294, 298, 299. 12 *John.* 407.) IV. Chittenden, Bliss & Co. were not affected by the order, because the property was obtained from them by a fraud before the order was drawn, and the order had no tendency to aid in the fraud. (1 *Wend.* 199.) V. The order on which this indictment is predicated, is not such an instrument as a charge of forgery can be sustained upon. (2 *R S.* 560, § 33, 2d ed. 2 *Russ. on Cr.* 265, 266. *Barb. Cr. Tr.* 126. 12 *Wend.* 425.)

*J. McKeon,* (district attorney) for the people. I. In order to constitute the offense of forgery, it is not necessary that any injury should be effected to person or to property. The offense is complete, when the false instrument is made and uttered with an intent to injure and defraud. On this point, the language of the statute is explicit. (*See* 2 *R. S.* 3d ed. 673, § 33.) The intention to defraud is essential to the completion of the offense; though it seems that it is not necessary to show that the prosecutor was defrauded. ( *Whart. Am. Law,* 340. *Com.* v. *Ladd,* 15 *Mass. R.* 526. *Rex* v. *Holden, Russ. & Ry.* 154. *U. S.* v. *Moses,* 4 *Wash. C. C. R.* 726.) II. It was not necessary to show that Ubsdell, Pearson & Company had sustained any injury—they had sufficient interest in the goods for all the purposes of the indictment. Had the goods been stolen from their possession, an indictment for larceny, charging them as their property, could have been sustained. (*Arch. Cr. Pl.* 179, 180, *Lond. ed.* 1843.) III. The original obtaining of the goods from Chittenden & Bliss, does not alter the character of this offense. The order on Ubsdell & Pearson was a clear forgery, and a distinct crime, for which the prisoner was liable to indictment. IV. It has already been shown, both by reference to the statute and authorities, that in order to constitute this offense, it is not necessary that any fraud should have been consummated. This point has been decided in the criminal courts of this state. (*See authorities under first point.*) (1.) The forgery of an order for the delivery of goods against a person, who by reason of

a legal disability, would not have been liable on such order had it in truth been genuine, is within the statute. (*Joseph Heath's case*, 2 *City Hall Rec*. 54.) (2.) On the trial of an indictment for uttering a forged instrument, if the jury are satisfied that the prisoner uttered it as true, and knew it to be forged, they are bound to infer the intent to defraud, and *it is enough if the indictment points the intent* to defraud the person who was primarily to be defrauded. (*Rex* v. *Hall*, 8 *Car. & Payne*, 274. *Rex* v. *Vaughan*, *Id*. 276. *People* v. *Cushing*, 1 *John*. 320.) (3.) It is sufficient to satisfy the allegation in the indictment; though the prisoner, from circumstances of which he was not apprised, could not in fact defraud the prosecutor. (*Rex* v. *Holden*, *Russ. & Ry*. 154. *Rex* v. *Shepard*, *Id*. 168, 291. *Rex* v. *Crowther*, 5 *Car. & Payne*, 316.) (4.) It is sufficient, if the jury believed that the prisoner intended to *defraud any person*, to sustain this conviction under the statute. The indictment charged the "intent to injure and defraud the firm of Ubsdell, Pearson & Co., *and divers other persons, to the jurors aforesaid unknown*." (*See* 2 *R. S.* 673.) (5.) The question whether the prisoner intended to injure and defraud Ubsdell, Pearson & Company, was a question of fact which the jury have passed upon; and their finding under the settled rule of law can not be reviewed on bill of exceptions. V. The order on which the indictment is predicated, is clearly within the statute. (*See* 2 *R. S.* 673, 2d sub. § 33. *Heath's case*, 2 *City Hall Rec*. 54. *People* v. *Shaw*, 5 *John. R*. 236.) VI. The charge of the court was correct; and is directly sustained by all the foregoing authorities.

*By the Court*, MITCHELL, J. An objection is taken that the indictment improperly lays that the forgery was with intent to defraud Ubsdell, Pierson & Co. The prisoner, by pretending that that firm had sent him to buy the goods for them, induced the firm of Chittenden, Bliss & Co. to send the goods to Ubsdell & Co.; and then by a forged instrument in the name of Chittenden & Co. obtained possession of the goods. The actual ownership still remained in the original owners; but Ubsdell &

Harris *v.* The People.

Co. having received the goods from them, would have a right to retain them as against all the world except the true owners. They might have suffered damage by the goods being taken fraudulently from them. In *Ward* v. *The People*, (3 *Hill*, 396,) it was held that if one steal goods, and they are stolen from him, the last thief is a felon as to the first thief, as he is also to the true owner : an indictment therefore alledging the theft to have been committed with a view to defraud the first thief would have been good ; much more then may it be said that an indictment alledging the intent to be to defraud one who has the lawful possession against all except the true owner, is good.

The other objection to the judgment below is that the instrument by which the fraud was perpetrated was not one for which the charge of forgery lay. It was a written instrument in the name of Chittenden, Bliss & Co., addressed to Ubsdell & Co., requesting them to send by the bearer the three pieces of silk, as the purchaser was in great want of them. This was forged and issued by the defendant with intent to injure or defraud the owners of the silk, and was an instrument in writing purporting to be the act of another, by which the rights or property of the owners would be affected. By it the property would have been delivered to the forger and the possession of it lost to the true owner, if the fraud had been ultimately successful. It is therefore within the 2 *R. S.* 673, § 33, *subd.* 2.

The case of *The People* v. *Stearns*, (21 *Wend.* 409,) is almost precisely similar. There a forged order on the cashier of a bank to deliver the plates of another bank, was held to be forgery within this statute.

The judgment below should be affirmed.